## No. 6043.

### JOHN WILLIAMS & SON VS. CHARLES MORGAN.

A common carrier is responsible for damages done to goods by the negligence of his employees.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier, J.*

*Bayne & Renshaw* for plaintiffs and appellants.
*Leovy & Kruttschnitt* for defendants and appellees.

Bayne & Renshaw, for plaintiffs, contended :

First—The carrier's obligation was to deliver in good order. Civil Code, 2754 ; 24 An. 333 ; 23 An. 585 ; 27 An. 233.

This obligation is of the highest order, and the existence of commerce depends upon its maintenance. 13 An. 269 ; 14 An. 431 ; 11 Rob. 24; 17 An. 291.

Second—The prescription of one year does not apply. 23 A. 353.

Leovy & Kruttschnitt, for defendant, contended :

First—In the absence of compensation, only gross negligence can create in this case a legal liability. Gross negligence is neither alleged nor proved.

Second—Plaintiff must make his case clear. His witnesses *guess* at the proportion of meal damaged.

---

The opinion of the court was delivered by

SPENCER, J. This is a suit to recover of Charles Morgan, owner of

the Morgan's Louisiana and Texas Railroad, the amount of $1408 23 for damages to a lot of cotton-seed meal, and $270, the value of the sacks holding said meal. The allegation is that said meal, consisting of about 1800 sacks, was part of a larger lot shipped over said road to the Leighton plantation, on Bayou Lafourche, in January and February, 1872 ; and that while *in transitu* it was greatly damaged by being exposed to rain and bad weather, whereby it was rendered unfit for use as a fertilizer. Plaintiffs claim that at least fifty per cent of loss was sustained on said 1800 sacks, and that the sacks themselves were rendered worthless by rotting and adhering to the meal, which became clotted and worthless. The answer admits having received the meal in good order and condition ; denies that the damage was due to any act or neglect of defendant, but was the result of the acts and negligence of plaintiffs' own agents.

The court below nonsuited plaintiffs, and they have appealed.

The facts seem to be as follows : Plaintiffs consigned the meal to their said plantation, which is situated about six miles above the railroad-crossing of the Lafourche. The Morgan road gave through bills, transferring its freights at the crossing to the flatboats of one C. C. Williams, who had a contract with the road to deliver its freights up and down the bayou.

Eight hundred and three sacks of this meal were brought by the cars to this crossing Saturday night or Sunday morning. The evidence shows that it was put out of the cars on the platform, and was then subjected to rain, which fell on Sunday morning. The evidence also shows that the flat which was used for transporting cotton-seed meal never did any work on Sundays. The meal, which was at first protected by tarpaulins, was uncovered, in order to use the tarpaulins to protect a lot of sugar. The evidence satisfies us that this meal was thoroughly watered that day, and that on the day after plaintiff made complaint thereof. We are also satisfied that the result of this was to materially damage the meal, and to render worthless the sacks containing it.

The defense attempts to show that one Long, who was then overseeing on the Leighton plantation, had sent word to C. C. Williams, the flatboat man, not to send up any more meal for a few days, as it was inconvenient at that time to haul it from the landing.

Even if it be conceded that Long had any authority to modify the contract of affreightment between plaintiffs and defendant, we are satisfied that that order was not the cause of the meal being left over Sunday on the railroad platform. It was because the flats did not run on Sundays. But it is shown that Long was not manager of the Leighton place, but a mere overseer. R. L. Pugh, the son-in-law of plaintiff, John Williams, was the responsible head of the place. Besides,

if the railroad employees were not able to protect freights thus proposed to be left in their charge, they should have notified that fact to the party asking the detention.

The evidence, as to any further damage than that of the 803 sacks, is unsatisfactory and inconclusive. We think the defendant should make good the loss on these 803 sacks, which the evidence shows amounted to fifty per cent of their value. The value of this lot of meal is shown to be about $1256 44. Fifty per cent of this is $628 22. The 803 sacks are shown to be worth about ten cents apiece, making $80 30, giving total for damage to meal, and price of sacks, $708 52, for which plaintiffs should have judgment.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is now decreed that J. M. Holloway, subrogee of John Williams & Son, plaintiffs, do have and recover of the estate of Charles Morgan seven hundred and eight dollars and fifty-two cents, with legal interest from judicial demand, and costs of both courts.